IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION FILE NO. |
| v. | 1:19-CR-192-MHC-JKL |
| SHARON BARNES SUTTON | |

**FINAL REPORT AND RECOMMENDATION**

This case is presently before the Court on Defendant Sharon Barnes Sutton's "Motion to Dismiss Indictment Based Upon Government's Violation of Defendant's Sixth Amendment Right to Counsel." [Doc. 19.] The government has responded to the motion [Doc. 22], and Defendant has filed a reply in support [Doc. 24]. For the following reasons, it is **RECOMMENDED** that the motion be **DENIED**.

**I.   BACKGROUND**

On May 15, 2019, a grand jury seated in the Northern District of Georgia returned an indictment charging Defendant, a former member of the DeKalb County Board of Commissioners (the "Board"), with two counts of extortion in violation of 18 U.S.C. § 1951, and one count of bribery in violation of 18 U.S.C. § 666(a)(1)(B). [Doc. 1-1.] The indictment alleges that between May and July 2014, Defendant solicited and received bribes from a subcontractor to ensure that the

subcontractor was awarded work on public projects over which she had approval authority. [*Id.* ¶¶ 3-5, 7, 24-25, 28, 31-33]. Defendant allegedly used an individual identified as "Public Official 1" in the indictment—who was the Board's chief of staff and later Deputy COO of the Public Works department—as a middle man for arranging the payments. [*Id.* ¶¶ 26, 29-30.]

As relevant to the pending motion, the indictment alleges that on June 2, 2014 and July 10, 2014, Public Official 1 recorded conversations between the Official and Defendant in which Defendant allegedly discussed her demands for payments from the subcontractor. [Doc. 1-1 ¶¶ 26-31.] According to the government in its response to the present motion, Public Official 1 was, at that time, a confidential informant for the FBI and made the recordings at the direction of the FBI. [Doc. 22 at 2; *see also* Doc. 1-1 ¶¶ 29-30 (identifying conversations recorded in July 2014).] The government represents that the FBI terminated its relationship with Public Official 1 on January 19, 2016. [*Id.*]

On August 5, 2019, Defendant moved to dismiss the indictment, or, alternatively, bar the government from using Public Official 1[1] as a witness or

---

[1] Throughout her brief, Defendant refers to Public Official 1 as the "confidential informant." [*See* generally, Doc. 19.] For the sake of clarity, the Court hereinafter uses Defendant's terminology.

evidence derived from the witness at trial, on the grounds that the government has interfered with her counsel's ability to make independent decisions about how to conduct the defense, thus depriving her of her Sixth Amendment right to effective assistance of counsel. [Doc. 19.] In support, Defendant identified three instances where the government purportedly made "direct, post-Indictment contact with her and infect[ed] the defense with misleading information," [*see id.* at 3]:

1. During a telephone conversation between Defendant and "Individual #1,"[2] in late May 2019, "Individual #1 relayed to [Defendant] that the confidential informant had stated that he/she was 'torn up' about the charges against [Defendant] and that he/she had been pressured (presumably by the government) to make a recording of [Defendant] to save himself/herself and protect his/her pensions." [Doc. 19 at 4.] Individual #1 further told Defendant that the confidential informant had requested Individual #1 to tell Defendant "to fight for her freedom

---

[2] Although not identified by name or position, according to Defendant's motion, Individual #1 appears to be a close acquaintance of both Defendant the confidential informant. [*See* Doc. 19 at 1 (describing Individual #1 as a "close acquaintance" of the confidential informant) and 4, 6 (explaining that Individual #1 and Defendant "often" spoke on the telephone and met for lunch).] Defendant does not contend that Individual #1 is associated with the government or acted on the government's behalf. [*See generally* Docs. 19, 24]

3

and mental and physical health" and to not speak to the media. [*Id.* at 5.]

2. On June 10, 2019, when Defendant spoke by telephone with an attorney who had represented her on other matters (the "Attorney"). [Doc. 19 at 5.] Unbeknownst to Defendant during the conversation, the Attorney also represented the confidential informant at that time. At the beginning of the conversation, Defendant told the Attorney that she believed she could not discuss this case with the Attorney because he did not represent her in his case. [*Id.*] The Attorney responded that he remained her attorney and could "give her counsel," and went on to "discuss the instant action" with her. [*Id.* at 5-6.] According to Defendant, the Attorney then told her that a member of the press had contacted him, but he had declined to give a comment; that the press would attempt to try the case in the court of public opinion; that Defendant's arrest on the charges was "disrespectful"; and that this case was "a bunch of bull," amounted to entrapment, and no crime had been committed, since bribery or extortion were not possible under the DeKalb County's "voting procedures and processes." [*Id.* at 6.]

>    Lastly, the Attorney asked Defendant to provide his phone number to Defendant's present counsel and stated that he wanted to help. [*Id.*]
>
> 3. On July 28, 2019, Defendant met Individual #1 for lunch. [Doc. 19 at 6.] During lunch, Individual #1 told Defendant that the confidential informant had told him that the FBI "possessed a recording which discussed entrapment and the fact that there was no crime committed." [*Id.*] Individual #1 asked Defendant if the information would be helpful, and Defendant responded affirmatively. [*Id.* at 6-7.] Defendant asked who was on the recordings, and Individual #1 responded that he/she did not know, but suggested that Defendant "ask for any and all recordings related to the instant case." [*Id.*][3]

For the first time on reply, Defendant identified the following additional contacts and other information that she contends is relevant to her motion:

---

[3] At the pretrial conference in this case, counsel for the government acknowledged that if the government in fact possessed an exculpatory recording as described by Individual #1, the defense would be entitled to it. [Doc. 24-4 at 15.] Counsel for the government represented that he did not believe such a recording existed, but that he would nevertheless "chase that down." [*Id.*] This recording is not mentioned further in the government's response brief or Defendant's reply; therefore, the Court presumes that the recording either does not exist or is no longer at issue.

1. On April 3, 2019, the government interviewed the confidential informant at a proffer session. [Doc. 24 at 2.] According to an FBI summary of the proffer session, the confidential informant "described the contents and alleged meaning of recordings between the [confidential informant] and [Defendant]." [*Id.*]

2. On June 10, 2019, Defendant and the unnamed Attorney spoke on the phone without defense counsel's knowledge, and during that conversation, the Attorney and Defendant "discussed the instant matter in detail, suggesting a defense strategy that did not focus on [the Attorney's] client (the [confidential informant])." [Doc. 24 at 2.] During the call, the Attorney instructed Defendant to have defense counsel contact him. [*Id.*] Defense counsel called the Attorney later that day, and they spoke for approximately 22 minutes. [*Id.*] The attorney did not reveal "initially" that he represented the confidential informant; however, at some point during the call he disclosed that he represented the confidential informant. [*Id.*] At some other point during the call, the Attorney "began to advise [defense counsel] regarding trial strategy and [the attorney's] opinion that [Defendant]

6

could not be convicted." [*Id.* at 2-3.] The Attorney went on to advise that defense counsel should focus his investigation on the government agents involved in the case, rather than the confidential informant. [*Id.* at 3.] The Attorney additionally told defense counsel that the confidential informant "would testify that the alleged payment discussed on the telephone call[4] was unrelated to the charges in the current Indictment." [*Id.*]

3. On August 6, 2019, the Court held a pretrial conference at which defense counsel discussed and elaborated on his client's contact with the Attorney discussed above. After the pretrial conference, defense counsel received two phone calls from the Attorney, who was using vulgar language and expressed that he was "upset regarding the discussion at the Pretrial Conference." [Doc. 24 at 4.]

4. Also on August 6, 2019, the Attorney was quoted in a newspaper article saying that, "It's a ridiculous notion that I would be used by the

---

[4] The Court presumes this to referred to the recordings identified in the indictment, which were made by the confidential informant.

7

FBI to try to set up a client at the detriment of another client . . . . It's a foolish contention." [Doc. 24 at 4.]

5. On August 7, 2019, the day after the pretrial conference, the Attorney telephoned Defendant and asked her what happened at the hearing. [Doc. 24 at 3.] Defendant responded that she had not attended the hearing. [*Id.*] The Attorney told Defendant that a reporter had contacted him and said that the Attorney "had been accused of improper contact with [Defendant], ostensibly to obtain information that would be passed to the FBI." [*Id.*] The Attorney told Defendant that defense counsel "should focus on other issues, such as determining whether the payee of the alleged bribe actually had a contract . . . when the vote took place" and suggested that defense counsel "may have jeopardized the attorney-client privilege by revealing information at the hearing." [*Id.*]

6. Finally, Defendant contends that the government misrepresented—both at the pretrial conference and in its response brief—that the confidential informant ceased working for the government in January 2016. [Doc. 24 at 4.] According to Defendant, the government's

8

contention "appear[s] to run directly counter to the FBI report which states that the confidential informant] participated in the April 3, 2019 proffer session where the [confidential informant] allegedly implicated [Defendant] in a bribery scheme." [*Id.*]

## II. DEFENDANT'S ARGUMENT

Defendant now contends that the government has somehow interfered with her relationship with defense counsel, in violation of the Sixth Amendment, based entirely on Defendant's contacts with the Attorney and Individual #1 discussed above. Relying on *Strickland v. Washington*, 466 U.S. 668, 686 (1984), Defendant argues that "the government violates a defendant's right to effective assistance of counsel when it impermissibly interferes with counsel's ability to make independent decisions about how to conduct the defense." [Doc. 19 at 2.] The government responds that Defendant's motion should be denied because Defendant has failed to show that the government was involved in or even aware of any attempted intrusion on the attorney-client relationship or that the purported intrusion prejudiced her. [Doc. 22.] Defendant has filed a reply, in which her counsel contends that the government's representations concerning the status of the confidential informant, the Attorney's "interference" with Defendant, and the "spurious information fed to [defense counsel] by the [A]ttorney have undermined

9

[defense counsel's] efforts to understand the case, caused confusion regarding the interrelationship between the government and the [confidential informant], caused [defense counsel] to question where to expend limited resources, raised concerns about who and what documents are to be credited or discredited, and possibly undermined the lawyer-client relationship due to outside 'advice' from a compromised counsel."  [Doc. 24 at 5-6.]

### III.   ANALYSIS

The Sixth Amendment guarantees an accused the right to the effective assistance of counsel for her defense.  "This right, fundamental to our system of justice is meant to assure fairness in the adversary criminal process."  *United States v. Morrison*, 449 U.S. 361, 364 (1981) (collecting cases).  As a result, courts have "been responsive to proved claims that governmental conduct has rendered counsel's assistance to the defendant ineffective."  *Id.* (collecting cases).  But even where the government has engaged in a deliberate violation of a defendant's Sixth Amendment rights, "absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate."  *Id.* at 365; *see also United States v. Walker*, 839 F.2d 1483, 1486-87 (11th Cir. 1988).  This is because "cases involving Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation

10

and should not unnecessarily infringe on competing interests," including "the necessity for preserving society's interest in the administration of criminal justice." *Morrison*, 449 U.S. at 364-65.

The crux of Defendant's argument is that the government has impermissibly impeded her defense counsel's ability to exercise his professional, independent judgment about how to conduct the defense in this case, thereby depriving her of effective assistance of counsel. [Doc. 19 at 2-4; Doc. 24 at 5-6.] This conduct, Defendant maintains, warrants sanctions of either dismissal of the indictment or barring the government from using the confidential informant, as well as evidence derived from him or her, at trial. The Court rejects Defendant's request for several reasons.

As an initial matter, Defendant's proposed remedies are aimed at punishing the government, but there is no plausible basis to believe that any of the alleged misconduct outlined in her motion and reply was directed by the government. Even giving Defendant the benefit of every reasonable doubt, the Court readily concludes that she has not presented information sufficient to suggest that the government

played any role whatsoever in any of the contacts detailed above.[5]  The absence of any governmental involvement in the contacts at issue here is fatal to Defendant's motion.  As the Supreme Court has explained:

> The Sixth Amendment guarantees the accused, at least after the initiation of formal charges, the right to rely on counsel as a "medium" between him and the State. . . . [T]his guarantee includes the State's affirmative obligation not to act in a manner that circumvents the protections accorded the accused by invoking this right.  The determination whether particular action by state agents violates the accused's right to the assistance of counsel must be made in light of this obligation.  Thus, the Sixth Amendment is not violated whenever—by luck or happenstance—the State obtains incriminating statements from the accused after the right to counsel has attached.

---

[5] Defendant attempts to discredit the government's representation that the FBI (and the government generally) terminated its relationship with the confidential informant in 2016 by pointing out that the confidential informant and Attorney attended a proffer session on April 3, 2019.  Defendant does not explain, however, how the attendance at a proffer session over three years later undermines the government's statement that it no longer had control over the confidential informant, much less his or her intermediaries (*i.e.* the Attorney and Individual 1#), at any time relevant to Defendant's motion.  Indeed, as the proffer agreement and report of proffer session—attached to Defendant's reply—show, the confidential informant's participation was entirely voluntarily, the only purpose of the session was to obtain answers to questions about the present criminal inquiry, and nothing about the session suggests the government in any way directed or encouraged the confidential informant (or the Attorney) to engage in any future contacts with Defendant or defense counsel, much less that the government sought to obtain future cooperation from the confidential informant.  [Doc. 25.]

*Maine v. Moulton*, 474 U.S. 159, 176 (1985); *see also United States v. Hicks,* 798 F.2d 446, 448 (11th Cir. 1986) (holding that government did not violate defendant's Sixth Amendment rights where there was no "intentional creation or knowing exploitation of an opportunity to confront appellant without her counsel"); *cf. United States v. Henry*, 447 U.S. 264, 274 (1980) (holding that government violated defendant's Sixth Amendment right to counsel by "intentionally creating a situation likely to induce [defendant] to make incriminating statements [to a paid informant] without the assistance of counsel"). Defendant does not cite any authority to support the contention that the requested sanctions of dismissal or exclusion of evidence are warranted in the absence of evidence that the government was involved in any of the contacts at issue here. Absent any non-speculative basis to believe that the government participated in a ruse to interfere with Defendant's relationship with her lawyer, the motion fails.

Defendant's motion also fails because she has not demonstrated that the contacts with Individual #1 or the Attorney violated her Sixth Amendment right to effective counsel. She asserts that "there has been impermissible interference with counsel's ability to make independent decision about how to conduct this defense" [*see* Doc. 24 at 6]; however, she articulates no detail that suggests her defense

strategy has been undermined in any manner or that the attorney-client relationship has been adversely affected. Nothing in the record suggests, for example, that Defendant or her counsel disclosed "specific facts in the case or strategic decisions" during any of the contacts described in her motion, much less disclosed them to the government. *See United States v. Ofshe*, 817 F.2d 1508, 1515 (11th Cir. 1987). Indeed, she has presented no evidence to suggest that any information whatsoever that Individual #1 or the unnamed Attorney may have garnered from those contacts was furnished to the government as a result of those contacts, and the proffer session does not appear to have involved any such information. *Id.* [*See also* Doc. 25 (proffer session report).] As the government points out in its response brief, "[t]here is no credible allegation that the alleged contacts either generated any tainted evidence or the defense's strategy was communicated to the government as a result of the alleged contacts." [Doc. 22 at 4-5.] The Court is wholly unconvinced that counsel has been hobbled in any appreciable way by any of the contacts described in the motion and reply.

But even if there were a colorable basis to believe that there has been a Sixth Amendment violation (and to be clear, there is not), the extreme remedy of dismissal is not warranted given the absence of a tangible, adverse impact on the

attorney-client relationship or the fairness of the criminal proceedings. The Supreme Court's decision in *Morrison* is on point in this regard. In *Morrison*, the defendant was indicted for distribution of heroin and retained counsel to represent her in the criminal proceedings. 449 U.S. at 362. Unbeknownst to her counsel, two DEA agents, knowing that defendant had been indicted and had retained counsel, met with her to try to persuade her to cooperate in a related investigation. *Id.* The agents also disparaged her counsel, suggested that she would be better-represented by a public defender, and told her that she "would gain various benefits if she cooperated but would face a stiff jail term if she did not." *Id.* The defendant declined to cooperate and alerted her counsel. *Id.* Thereafter the agents visited her again outside the presence of counsel; however, at no point did she incriminate herself or give information relevant to her case, and she continued to rely on the services of her retained counsel. *Id.* at 362-63.

The defendant in *Morrison* then moved to dismiss the indictment on the grounds that the government had violated her Sixth Amendment right to counsel. 449 U.S. at 363. The defendant did not allege in her motion that she had been prejudiced in any tangible way by the alleged misconduct; rather, she based her motion solely on the behavior of the agents' alleged interference with her right to

counsel. *Id.* The district court denied the motion, and the Third Circuit reversed, holding that regardless of whether there had been an effect on the defendant's representation, the conduct was so egregious that dismissal of the indictment with prejudice was warranted. *Id.* On appeal, the Supreme Court reversed again, holding that even if the agents' conduct violated the Sixth Amendment right to counsel, dismissal was not warranted in the absence of some adverse consequence to the attorney-client relationship or to the fairness of the criminal proceedings. *Id.* at 366-67. Without a showing that her counsel was unable to provide "adequate representation" in the proceedings, the "drastic relief" of dismissal was simply "inappropriate." *Id.* at 366; *see also Walker*, 839 F.2d at 1486-87 (holding that the defendant failed to demonstrate the specific ways that his representation and/or trial had been compromised by the interference with his relationship with counsel).

Similar to the defendant in *Morrison*, Defendant has not demonstrated any "prejudice, or substantial threat thereof" necessary to justify the remedy of dismissal of the case. There is no indication that the relationship between Defendant and defense counsel has been compromised even slightly as a result of those contacts. Likewise, outside of conclusory assertions that defense counsel is

16

now questioning which witnesses and evidence to credit,[6] Defendant has not shown that she or her counsel has suffered any actual or threatened prejudice that would justify dismissal of the indictment.  By the same token, the extreme sanction of preventing the government from calling the confidential informant to testify at trial and excluding all evidence derived from him or her is disproportionate to any purported harm, and the Court is aware of no authority suggesting otherwise.  *Cf. Walker*, 839 F.2d at 1487 (any "relief must be tailored to the wrong").

In sum, Defendant has failed to show that the government was involved in (or even aware of) any of the alleged contacts, that any of those contacts actually amounted to a Sixth Amendment violation, or that she has suffered any prejudice.  Defendant's motion, therefore, is due to be denied.

## IV.  CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Defendant Sharon Barnes Sutton's "Motion to Dismiss Indictment Based Upon Government's Violation of Defendant's Sixth Amendment Right to Counsel" [Doc. 19] be **DENIED**.

---

[6] The Court presumes that defense counsel was already questioning which witnesses and evidence to credit prior to Defendant's contacts with Individual #1 and the Attorney.

I have now addressed all referred pretrial matters relating to this defendant and have not been advised of any impediments to the scheduling of a trial. Accordingly, this case is **CERTIFIED READY FOR TRIAL**.

IT IS SO RECOMMENDED this 12th day of September, 2019.

_____
JOHN K. LARKINS III
United States Magistrate Judge